Filed 4/24/14  P. v. Merlos CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE ANTONIO MERLOS,<br><br>        Defendant and Appellant. | B250202<br><br>(Los Angeles County<br>Super. Ct. No. 91P07983<br>Appellate Division<br>Case No. BR050504)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 2, 2014, is modified as follows:

On page 1, paragraph 1, delete the first paragraph in its entirety and replace with:

APPEAL from a judgment of the Superior Court of Los Angeles County,

Thomas E. Grodin, Judge.  Reversed and remanded.

[NO CHANGE IN JUDGMENT.]

Filed 4/2/14  P. v. Merlos CA2/3 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ANTONIO MERLOS,<br><br>    Defendant and Appellant. | B250202<br><br>(Los Angeles County<br>Super. Ct. No. 91P07983<br>Appellate Division<br>Case No. BR050504) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Patti Jo McKay, Judge.  Reversed and remanded.

Law Offices of Anthony J. Pullara and Bernardo Lopez, for Defendant and

Appellant.

Michael N. Feuer, Los Angeles City Attorney, Debbie Lew, Assistant City

Attorney and Rick V. Curcio, Deputy City Attorney, Criminal Appellate Division, for

Plaintiff and Respondent.

Twenty-one years after defendant was convicted, based on a no contest plea, of misdemeanor domestic violence, defendant moved to vacate the judgment and withdraw his plea. Defendant argued that, at the time of his plea, he had not been properly advised of the immigration consequences of his conviction, as required by Penal Code section 1016.5. Penal Code section 1016.5, subdivision (b) provides that, in the absence of a "record" showing that the court had provided the defendant with a proper advisement, there is a rebuttable presumption that the defendant was not properly advised. Here, as defendant's motion to vacate was filed long after the records pertaining to his plea were destroyed, the presumption arose. The prosecution sought to meet its burden of proving that defendant was properly advised by relying, in part, on the standard advisement of rights form purportedly in use by the trial court at the time of defendant's plea. The trial court found that the prosecution had successfully met its burden, and denied defendant's motion, specifically relying on the standard advisement of rights form. The appellate division reversed, holding that the standard advisement of rights form was completely irrelevant to the appropriate analysis. The prosecution petitioned to transfer the case to this court, arguing that, in cases where the records have been destroyed, the standard advisement of rights form can constitute circumstantial evidence of the advisements given. We agree; however, we conclude that as the standard advisement of rights form was not properly authenticated in this case, the appellate division did not err in excluding it from consideration. We therefore will reverse the trial court's decision and, for the reasons set out below, will remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    *Defendant's Plea*

On August 15, 1991, defendant was charged with three misdemeanor counts: battery (Pen. Code, § 242); domestic violence (Pen. Code, § 273.5, subd. (a)), and assault (Pen. Code, § 245(a)(1)), all arising from a single incident. Defendant was arraigned and advised of his rights. He then entered a no contest plea to domestic violence. The court found him guilty. Imposition of sentence was suspended, defendant was placed on summary probation for two years, with certain conditions. The remaining counts were dismissed. Defendant ultimately completed his conditions of probation.

### 2.    *Defendant's Motion to Vacate the Judgment and Withdraw His Plea*

Twenty-one years later, on September 18, 2012, defendant filed a motion to withdraw his plea, on the basis that he had not been properly advised of the immigration consequences of his conviction. Defendant submitted a declaration in support of his motion, stating that, in February 2012, when returning to the United States from a trip to El Salvador, he was detained by Immigration and Customs Enforcement for several months. He was informed by his immigration attorney that his 1991 domestic violence conviction renders him deportable.

Defendant stated that he had been unaware of the immigration consequences of his plea, and that he had pleaded no contest because he believed there were minimal consequences to the plea and it would get him released from custody. He stated that, had he known of the immigration consequences, he would not have accepted the plea

3

agreement and would have continued to fight the case, hoping for an immigration-neutral resolution. Defendant declared that he would have accepted an immigration-neutral plea (if offered) even if it required him to spend more time in custody. He explained, "At the time of this conviction, my immigration status was extremely valuable to me because I was a green card holder, was married with two children, and was in the process of becoming a U.S. citizen."[1]

        3.      *The Prosecution's Opposition*

In opposition to the motion, the prosecution argued that defendant had been properly advised. By the time of the defendant's motion, the court file had been destroyed; the reporter's notes had been destroyed as well. Thus, minimal records existed to resolve the issue of the whether the defendant had been properly advised. The prosecution relied on a copy of the minute order of defendant's plea. The minute order states an interpreter was present. With respect to the issue of advisement of rights, the minute order states: "Defendant arraigned and advised of the following rights at mass advisement: speedy public trial, trial within 30/45 days, right to remain silent, subpoena power of court, confrontation and cross examination, jury trial, court trial, right to attorney, self representation, reasonable bail, *citizenship*, effect of priors,

---

[1]    The prosecution would later argue that defendant did not act with due diligence in bringing his motion to vacate the judgment and withdraw the plea. While defendant's declaration states that he was unaware of the immigration consequences at the time of his plea, and that he is now aware of those consequences, he does not state when, in fact, he had learned of the immigration consequnces of his conviction. As he states that he was "in the process" of becoming a citizen at the time of his plea in 1991, and he is clearly not a citizen now, it may well be that defendant's conviction derailed his citizenship application many years ago, a circumstance of which he certainly would have been then aware.

4

pleas available probation." (Emphasis added.) The order goes on to state, "Defendant advised of and personally and explicitly waives the following rights: [¶] Written advisement of rights and waivers filed, incorporated by reference herein." It states that "counsel for the defendant joins in the waivers and concurs in the plea." Finally, the minute order states that the "court finds that each such waiver is knowingly, understandingly, and explicitly made."

The minute order refers explicitly to defendant having been advised as to "citizenship." As we shall discuss, this is insufficient to constitute a record establishing that defendant had been properly advised of the immigration consequences of his plea pursuant to Penal Code section 1016.5. The minute order also refers to a written advisement of rights and waivers. Presumably, that document would go a great distance toward resolving the issue of whether defendant had been properly advised of his immigration rights. As that document is no longer in existence, the prosecution sought to establish its contents by secondary evidence, to wit, the standard advisement of rights form in use by the trial court at the time.

The prosecution submitted the declaration of Deputy City Attorney Jane Lee, the prosecutor opposing the motion to vacate. Attorney Lee declared that, in April 2005, she contacted Dragutin Ilich in the Planning and Research Division of the Superior Court, and asked him for all misdemeanor advisement and waiver forms from 1982 to the present. Illich compiled the forms; Attorney Lee picked them up from the Planning and Research Division. When Attorney Lee discovered that there was not a form for every year, she spoke to Ilich, who informed her that the court did not reprint the form

5

every year, and that some forms were used in consecutive years. Ilich confirmed, however, that he had given her all of the forms "used by the courts in Los Angeles from 1982 through 2005." Attorney Lee compiled the forms chronologically. She concluded that the form in use in 1991 was the 1989 form, as the next form after 1989 was the 1992 form. She attached to her declaration the standard 1989 Misdemeanor Advisement of Rights, Waiver, and Plea Form. That form has boxes for the defendant to initial to confirm his understanding of the provisions therein. It has a section entitled "Consequences of Plea of Guilty or No Contest," and it includes among the consequences, the statement, "I understand that if I am not a citizen, a plea of guilty or no contest could result in deportation or exclusion from admission to this country, or denial of naturalization or amnesty." There is no dispute in this case that this language, if actually conveyed to defendant, would be sufficient to satisfy the requirements of Penal Code section 1016.5. The prosecution argued that the minute order's reference to a written advisement of rights form, combined with the standard advisement of rights form in effect at the time of defendant's plea, gave rise to the inference that the defendant had been properly advised by means of a form identical to the standard.

The prosecution also argued that defendant's motion to vacate his plea was untimely. Further, the prosecution argued that defendant failed to sufficiently establish prejudice.

4.      *The Hearing*

At the hearing, defendant argued that it would be improper to give the standard advisement of rights form any weight, as Attorney Lee's declaration authenticating it

6

was hearsay. Defendant argued that Attorney Lee was not the custodian of records and had no personal knowledge of which form was used in 1991. Attorney Lee responded that, as the standard form was obtained from the superior court, the court could simply take judicial notice of it as a court record. She went on to argue, "It was the practice of the court to take these waivers through the misdemeanor advisement of rights waiver forms. The waiver forms were used on a regular basis. Particularly in this case we know the waiver form was used." The prosecution argued that the minute order showed that the trial court "found that the defendant had knowingly, understand[ingly] and explicitly waived his rights and understood that form."[2] The defendant responded that Attorney Lee had no personal knowledge as to the practice of the courts in 1991, nor personal knowledge as to the form used in any particular courtroom in 1991.

The trial court then asked Attorney Lee if, having looked at the forms historically used, she was "trying to say that was the custom and habit that was used at that time." Attorney Lee agreed. The trial court then stated that this was not the first case of this type the court had seen, and added, "I have seen these forms from past years. And they are correct. I have looked at them. That is the best I can tell you." Defense counsel argued that, in his experience,[3] "different forms are used in different judicial districts."

---

**2**      This is something of an overstatement. The trial court found that the waiver was knowingly, understandingly and explicitly made, but made no specific finding that the defendant understood the *form*. Indeed, as we shall discuss, while the trial court referred to a "written advisement of rights and waivers," there is no actual statement in the minute order referring to the use of a form advisement.

**3**      Defense counsel conceded that his experience did not constitute competent evidence.

The trial court agreed, and also agreed that it may be that not all of the forms contained the immigration advisement. However, the court stated, "Fortunately it does not appear to be the case in this matter."

The court denied the motion, concluding that defendant had been properly advised of the immigration consequences of his conviction. The trial court agreed that, as there was no record showing defendant was advised, a rebuttable presumption had arisen that he had not been properly advised. However, the court concluded that the prosecution had rebutted the presumption, with the combination of the minute order and the standard advisement of rights form.

5. *Defendant's Appeal*

Defendant appealed the ruling to the appellate division, arguing that the standard advisement of rights form was unauthenticated and that, therefore, the trial court erred in relying on it. The prosecution responded that it was within the trial court's discretion to conclude that the form had been sufficiently authenticated. The prosecution argued, "[H]ere, the prosecutor declared she personally knew the blank waiver form attached to her declaration was the form used when defendant entered his plea, based on undisputed information she received from court personnel."

The appellate division reversed the trial court. The appellate division concluded that the minute order alone was insufficient to defeat the presumption that the defendant was not properly advised, and that the standard advisement of rights form was simply not relevant. The appellate division declined to rule on the evidentiary objections to Attorney Lee's declaration, setting aside the issues of hearsay and lack of foundation.

8

The court stated, "even assuming this form was in existence, there is no evidence that this was the form used by the court in obtaining the waiver from defendant. The record only reflects that a written advisement of rights and waivers was filed. Next, we cannot assume that defendant initialed the box pertaining to the immigration consequences of a guilty plea." As such, the appellate division found the standard advisement of rights form irrelevant. Thus, there was no evidence beyond the minute order to support the conclusion that the defendant had been properly advised.

Although the appellate division concluded that the trial court erred in finding that the defendant was appropriately advised of the immigration consequences of his conviction, the appellate division remanded the matter back to the trial court to make factual findings on the other issues raised, including prejudice and diligence.

6. *Petition to Transfer*

The prosecution then filed a petition to transfer the matter to this court. We transferred the case and permitted additional briefing.

## ISSUES PRESENTED

This case presents the issue of whether, when a motion to withdraw a plea for inadequate immigration advisements is made after the trial court records have been destroyed, a court may rely on the standard advisement of rights form which had been in use at the time of the plea as evidence of the advisements given. We conclude that, if the document is properly authenticated, it may be relied upon. In this case, the document was not properly authenticated, so the trial court erred in relying upon it.

9

# DISCUSSION

### 1.  *Standard of Review*

"A motion to vacate judgment of conviction because of a wrongfully obtained guilty plea is directed to the trial court's sound discretion, and the reviewing court may not disturb the trial court's order in the absence of abuse of discretion.  [Citations.]  An abuse of discretion occurs if the court acted 'in an arbitrary, capricious or patently absurd manner resulting in a manifest miscarriage of justice.'  [Citations.]  The defendant must establish by clear and convincing evidence the grounds for withdrawing a guilty plea.  [Citations.]"  (*People v. Suon* (1999) 76 Cal.App.4th 1, 4.)

### 2.  *The Immigration Advisements*

Penal Code section 1016.5, subdivision (a), provides that, prior to accepting a plea of guilty or no contest to any offense other than an infraction, the court "shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  There are three separate issues addressed by this advisement (deportation, exclusion, and denial of naturalization/citizenship), and a trial court must advise on all three issues. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 207-208.)  It is not necessary, however, that the trial court advise the defendant orally; a written advisement, if understood by the defendant, is sufficient.  (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 523; *People v. Quesada* (1991) 230 Cal.App.3d 525, 536.)  Nor is

it necessary for the trial court, personally, to give the advisement. It may be given by counsel, the court reporter, or the clerk. As long as "some person acting on behalf of the tribunal" actually advises the defendant of the immigration consequences, the adviser's identity is immaterial. (*People v. Quesada, supra,* 230 Cal.App.3d at pp. 535-536.)

If the court fails to advise the defendant of the immigration consequences as required by Penal Code section 1016.5, subdivision (a), the defendant can move to vacate the judgment and withdraw the plea. (Pen. Code, § 1016.5, subd. (b).) To prevail on such a motion, "a defendant must establish: (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement, i.e., if properly advised, he or she would not have pleaded guilty or nolo contendere. [Citation.]" (*People v. Dubon* (2001) 90 Cal.App.4th 944, 951-952.) We are concerned, in this case, with the first element.

The governing statute provides that the advisement shall be administered "on the record." (Pen. Code, § 1016.5, subd. (a).) "Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement." (Pen. Code, § 1016.5, subd. (b).) This constitutes a rebuttable presumption affecting the burden of proof. It places upon the prosecution the burden proving by a preponderance of the evidence the nonexistence of the

11

presumed fact.  Thus, the prosecution must prove that the required advisements were given.  (*People v. Dubon, supra,* 90 Cal.App.4th at p. 954.)

A court's minute order indicating that the Penal Code section 1016.5 advisement was given can constitute a "record" that the advisement was given sufficient to preclude the presumption from arising.  (*People v. Dubon, supra,* 90 Cal.App.4th at p. 954.)  However, as a Penal Code section 1016.5 advisement must address deportation, exclusion, and denial of naturalization, a minute order which does not indicate that *all* three issues were addressed is insufficient.  (*Id*. at p. 955.)  Nonetheless, once the rebuttable presumption has arisen, such a minute order constitutes "significant evidence" rebutting the statutory presumption.  (*Ibid.*)  The minute order, considered in combination with other evidence, may be sufficient to give rise to an inference that the defendant was actually advised of the immigration consequences of the plea, and overcome the rebuttable presumption of nonadvisement.  (*Id*. at pp. 955-956.)

3.    *The Minute Order in the Instant Case*

In the instant case, the minute order indicates that defendant was advised as to "citizenship"; it does not indicate that he was advised as to deportation and exclusion. As such, the minute order does not constitute a record that defendant was properly advised under Penal Code section 1016.5, and the presumption of nonadvisement arises.

The minute order, however, does constitute some evidence that the defendant was properly advised.  It indicates that he was orally advised at least as to "citizenship." The minute order also indicates that defendant was additionally advised of rights in writing, and with the advice of counsel.  It further indicates that the court found that

12

defendant's waivers of rights were made knowingly, understandingly, and explicitly, giving rise to an inference that there was some additional colloquy on the subject prior to the acceptance of defendant's plea. Standing alone, however, the minute order is insufficient to overcome the rebuttable presumption. As in *People v. Dubon, supra,* 90 Cal.App.4th at p. 955, it must be combined with additional evidence.

      4.     *The Standard Advisement of Rights Form*

In this case, the prosecution sought to provide that additional evidence in the form of the standard advisement of rights form in use at the time of defendant's plea. Defendant argued that the form proferred by the prosecution was not properly authenticated, and we agree. Authentication of a writing is required before it may be received in evidence. (Evid. Code, § 1401, subd. (a).) To authenticate the document, its proponent must establish that the document is the writing it purports to be. (Evid. Code, § 1400.)

According to the prosecution, the standard form submitted was the standard advisement of rights form in use at the time of defendant's plea in the court in which the plea was taken. The evidence that the form was the standard advisement of rights form in use in 1991, however, was Attorney Lee's testimony that Ilich *had told her* that the 1989 form was used in 1991.[4] Attorney Lee had no personal knowledge of the fact. Ilich's statement that the 1989 form was used in 1991 was clearly hearsay (Evid. Code,

---

[4]     Ilich did not actually tell Attorney Lee that the 1989 form had been used in 1991; however, this fact could be inferred from the facts Ilich did tell her.

§ 1200), and the prosecution offered no possible exception to the hearsay rule.[5]

A declaration of Ilich himself might be sufficient (Evid. Code, §§ 1271, 1280), but there is no declaration from him. The prosecution suggests that the document is self-authenticating in this respect, as it contains the notation "PRU-200 (1-89)" on the bottom, from which the reader could infer it is the January 1989 version of the document. Even if this were a reasonable inference,[6] the only evidence that this document was not superseded until 1992 is Ilich's hearsay statement recited in Attorney Lee's declaration.

The evidence authenticating the document as the standard advisement of rights form in use in the court in which defendant's plea was taken is also lacking. Attorney Lee personally obtained the document from the Planning and Research Division of the Superior Court. This therefore constitutes sufficient evidence that the form was, in fact, a Los Angeles court document. The form itself is captioned for use in a municipal court; this therefore constitutes sufficient evidence that the form was used in Los Angeles Municipal Court. However, the form could have been one of many; there is no evidence that every courtroom in the Los Angeles Municipal Court used the form. It is not identified as a mandatory form (see Cal. Rules of Court, rule 1.30(b)). The only evidence giving rise to the conclusion that this form was used in the courtroom where

---

[5]     Before this court, the prosecution argues that the *form itself* is not hearsay as the issue is whether the immigration advisement contained therein was *given*, not whether it was *true*. Defendant's hearsay objection, however, does not relate to the language in the form, but Attorney Lee's declaration purporting to authenticate it.

[6]     There is little indicating that the "1-89" refers to the date of the form revision.

14

defendant's plea was taken is Attorney Lee's statement that Ilich "informed [her] that his office had taken great care in providing me all the forms and I was in possession of all Misdemeanor Advisement of Rights forms used by the courts in Los Angeles from 1982 through 2005." The statement, again, is inadmissible hearsay. The standard form on which the prosecution sought to rely is not sufficiently authenticated, and the trial court abused its discretion by relying on the document.[7]

The prosecution raises two additional arguments to support the trial court's consideration of the standard advisement of rights form it proffered. Neither is persuasive. First, the prosecution argues that the court could take judicial notice of the form as an official record of the court. (Evid. Code, § 452, subd. (d).) This does not resolve the authentication issue; judicial notice does not establish that the document was in use in all Los Angeles Municipal courtrooms in 1991. Second, the prosecution relies on the trial court's comments that the court had seen many similar forms in many similar motions, and they were all "correct."[8] The trial court's familiarity with other cases has no bearing on the instant case.

---

[7] At the trial court's invitation, Attorney Lee stated that it was the custom and habit that the form was used at the time, but this statement was based on her conversations with Ilich, not any personal knoweldge.

[8] We note that while the trial court mentioned this in passing, there is nothing in the record suggesting that the trial court relied on evidence in other cases in the court's disposition of the instant case. The prosecution argues that the trial court could have done so, relying on *People v. Ravaux* (2006) 142 Cal.App.4th 914, 918. In that case, the defendant, prior to sentencing, moved to withdraw his plea on the basis that his judgment had been affected by medication at the time. The trial court, which had presided over the plea hearing, relied on the court's own perception of the defendant's demeanor and performance at that hearing. The appellate court ruled that it was entirely

15

5.      *Properly Authenticated, Such Forms May Be Admissible*

Although the standard advisement of rights form was not properly authenticated in the instant case, we can certainly envision a situation in which a properly authenticated form is admissible and relevant. When a document is no longer in existence, its contents may be established by secondary evidence, including oral testimony and standard forms. (*Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1070.) When there is evidence, as in this case, that a defendant executed a written advisement of rights form, and it can be inferred that the form was a standard form, a copy of the standard form itself constitutes evidence of the form the defendant executed, and is therefore admissible.

We do note, however, that the issue of whether the standard advisement of rights form can be sufficient evidence, when combined with a minute order, to overcome the rebuttable presumption of nonadvisement will depend on the facts of the specific case. In *People v. Dubon, supra,* 90 Cal.App.4th at p. 949, the inadequate minute order was supplemented by a declaration of the retired judge who had taken the plea that, although he had no independent recollection of the case, his custom and practice was to take pleas himself, and that he specifically gave the Penal Code section 1016.5 advisement in every case. In *People v. Ramirez, supra,* 71 Cal.App.4th at p. 523, the record established that the trial court inquired into whether the defendant had reviewed the

within the court's discretion to consider its own observations of the defendant. Obviously, the trial court was a percipient witness to the defendant's behavior at the hearing in question. This is a far cry from a trial court using its familiarity with evidence introduced in other cases to establish the evidence in the instant case would be the same.

form with his attorney, whether it had been translated into Spanish, and whether he understood the advisements discussed. In *People v. Quesada, supra,* 230 Cal.App.3d at p. 536, the court stated that advisements in a written form are sufficient if "the defendant and his counsel are questioned concerning that form to ensure that defendant actually reads and understands it."

As the form in the instant case was inadmissible, we need not determine whether the trial court abused its discretion in concluding that the form, when combined with the minute order, was sufficient to overcome the rebuttable presumption. Certainly, evidence regarding the standard practices of the judge who took the plea[9] or defendant's counsel[10] would have provided greater evidence.

6.      *Remand Is Appropriate*

As we have concluded that the trial court erred in considering the standard advisement of rights form, and the minute order alone is insufficient to overcome the rebuttable presumption, we will reverse the trial court's denial of defendant's motion to vacate the judgment and withdraw his plea. However, as the trial court did not reach the issues of due diligence or prejudice, we remand to give the trial court the opportunity, in the first instance, to consider them.

---

[9]      The record here indicates the judge was not available.

[10]      The prosecution's opposition to defendant's motion to withdraw his plea states that the defendant was represented by "F. Barcelo, Deputy Public Defender." The minute order of the plea indicates that defendant was represented by "Cho Deputy Public Defender." F. Barcelo was the Spanish interpreter. There is no indication either individual was contacted.

At oral argument on appeal, it became clear that the evidence submitted by both parties in connection with defendant's motion was, perhaps, not the best evidence they could have submitted. Considerations of justice compel the conclusion that both parties should be permitted to submit additional evidence. Should the prosecution continue to rely on the standard advisement of rights form it submitted, the prosecution should, if it can, present evidence authenticating the document without running afoul of the hearsay rule. Additionally, as other cases have demonstrated, the prosecution may wish to meet its burden of overcoming the rebuttable presumption with evidence regarding the standard practices of the judge who took defendant's plea or those of defendant's counsel. For his part, defendant may wish to modify his submissions to explain when he first learned of the immigration consequences of his conviction and why he was diligent in bringing his motion when he did. Defendant may also, if he can, provide additional evidence on the issue of prejudice, specifically addressing the issues of: (1) whether, at the time of the motion, there existed more than a remote possibility that he would suffer one of the adverse immigration consequences specified in Penal Code section 1016.5; and (2) whether, if he would not have been able to have negotiated an immigration-neutral plea, he would have proceeded to trial.

## DISPOSITION

The order denying defendant's motion to vacate the judgment and withdraw his plea is reversed and the matter is remanded for further proceedings consistent with the views expressed in this opinion.

***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.

19